IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OSVALDO PUMBA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 22-2929 |
| | : | |
| v. | : | |
| | : | |
| AMANDA MEAD VOLPE, BROOKE | : | |
| ALBERTA GAGLIONE, TARALYNA | : | |
| GONZALEZ, REGISTER NURSE | : | |
| KAYSCE, and JANINE DONATE, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                          October 25, 2022

    The plaintiff, an individual incarcerated at a county jail and who has now, while proceeding *in forma pauperis*, brought numerous civil rights actions against individuals employed at the jail, has once again asserted claims for constitutional violations against some of the jail's employees. His current claims arise out of separate alleged incidents where (1) correctional officers took away his food, (2) correctional officers used excessive force to enter his cell, then deprived him of food and water, (3) a nurse at the jail refused to provide him with medical treatment after he sustained injuries caused by the correctional officers' use of excessive force, and (4) correctional officers deprived him of a mattress and clothing. He also asserts that the director of the jail used a racial epithet when speaking to him.

    The court will again grant the plaintiff leave to proceed *in forma pauperis* in this action. In addition, after screening the complaint under 28 U.S.C. § 1915(e)(2), the court will dismiss without prejudice the plaintiff's claims except for his excessive force claim against a correctional officer and his claim for deliberate indifference to serious medical needs against the jail nurse. The court

will provide the plaintiff with the option of filing an amended complaint to cure the defects in the claims the court is dismissing or inform the court that he intends to proceed on only his excessive force and deliberate-indifference-to-serious-medical-needs claims.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Osvaldo Pumba ("Pumba"), a prisoner at the Lehigh County Jail ("LCJ") commenced this action by filing an application for leave to proceed *in forma pauperis* ("IFP Application"), complaint, and prisoner trust fund account statement, which the clerk of court docketed on July 25, 2022.[1] *See* Doc. Nos. 1, 2, 4. In the complaint, Pumba names the following defendants associated with the LCJ: (1) Sergeant Amanda Mead Volpe ("Sergeant Volpe"); (2) Lieutenant Brooke Alberta Gaglione ("Lieutenant Gaglione"); (3) Lieutenant Taralyna Gonzalez ("Lieutenant Gonzalez"); (4) Janine Donate ("Director Donate"); and (5) Registered Nurse Kaysce ("Nurse Kaysce"). *See* Compl. at ECF pp. 1–2, Doc. No. 2.

The complaint is based on three distinct events. The first event is alleged to have occurred on May 21, 2021, when Lieutenant Gonzalez ordered officers on the block to remove Pumba's dinner and lunch from his cell and throw them into the trash. *Id.* at ECF p. 4. When Pumba asked Lieutenant Gonzalez why the officers threw away his food, she responded, "the officer threw the food away because I said so." *Id.*

The second event allegedly occurred on June 16, 2022, when Sergeant Volpe ordered the CERT team "to use excessive force against [Pumba] by punching [him], kick[ing him] on the head

---

[1] Pumba has filed 13 other complaints in this court. *See Pumba v. Lehigh Cnty. Jail, et al.*, Civ. A. No. 21-5585, Doc. No. 2; *Pumba v. Madrid, et al.*, Civ. A. No. 21-5639, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-134, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-137, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-179, Doc. No. 2; *Pumba v. Maldonado, et al.*, Civ. A. No. 22-476, Doc. No. 3; *Pumba v. Miller., et al.*, Civ. A. No. 22-2050, Doc. No. 2; *Pumba v. Knappenberger, et al.*, Civ. A. No. 22-2076, Doc. No. 3; *Pumba v. Knappenberger, et al.*, Civ. A. No. 22-2078, Doc. No. 3; *Pumba v. Kowal, et al.*, Civ. A. No. 22-2082, Doc. No. 2; *Pumba v. Sidor, et al.*, Civ. A. No. 22-2900, Doc. No. 2; *Pumba v. Kowal, et al.*, Civ. A. No. 22-2940, Doc. No. 2; and *Pumba v. Godfrey, et al.*, Civ. A. No. 22-2952, Doc. No. 2. This memorandum opinion addresses only Civil Action No. 22-2929.

and us[ing] cuffs on [his] wrists as a weapon to cut [his] right wrist." *Id.* at ECF p. 5. Pumba alleges that Sergeant Volpe used OC spray against Pumba all over his body and "for hour hours straight." *Id.* He also alleges that Sergeant Volpe ordered correctional officers to not give him food and ordered maintenance officers to turn off the water in his cell. *See id.* Pumba alleges that he was then placed in a suicide cell where his clothing and mattress were removed. *See id.* Pumba states that he suffered injuries to his wrist, body pain, and a fever because of the incident. *See id.* He asked Nurse Kaysce to treat his injuries, body pain, and fever, and "to remove the OC spray from [his] body," but she allegedly refused. *Id.*

The third event allegedly took place on the following day, June 17, 2022, when Pumba asked Lieutenant Gaglione to provide him with a mattress and turn on the water in his cell, and she refused. *See id.* Pumba states that when he "contacted Director Donate she said, 'she hates n— and that [he] deserved it." *Id.*

Based on these allegations, Pumba asserts Eighth Amendment claims under 42 U.S.C. § 1983 and seeks money damages. *See id.* at ECF p. 4.

## II.  DISCUSSION

### A.  The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files

> a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Pumba is unable to prepay the fees to commence this civil action. Therefore, the court will grant him leave to proceed *in forma pauperis*.[2]

### B.  Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915

Because the court has granted Pumba leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that

---

[2] As Pumba is a prisoner, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

"[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, No. 20-

5

2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### C. Analysis

Pumba claims that the defendants violated his Eighth Amendment rights and seeks relief under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

6

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

### 1.     Conditions-of-Confinement Claims

Pumba alleges that Lieutenant Gonzalez and Sergeant Volpe violated his Eighth Amendment rights by depriving him of prison meals. He also alleges that Sergeant Volpe and Lieutenant Gaglione violated his Eighth Amendment rights by depriving him of a mattress, clothing, and water, while he was placed in the suicide cell.

Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). In general, "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Regarding the first prong, necessities include food, clothing, shelter, medical care, and reasonable safety. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000) ("[W]hen the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter,

7

medical care, and reasonable safety." (citing *DeShaney v. Winnebago Co. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))). As for the second prong, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Only conditions of confinement that "cause inmates to ensure such genuine privations and hardship over an extended period of time" violate the Eighth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (citation and internal quotation marks omitted).

          a.        <u>Deprivation-of-Food Claim</u>

"Under the Eighth Amendment, prisoners are entitled to a nutritionally adequate diet." *Tapp v. Proto*, 718 F. Supp. 2d 598, 621 (E.D. Pa.), *aff'd* 404 F. App'x 563 (3d Cir. 2010). To allege that a defendant unconstitutionally deprived them of food, a prisoner must allege "both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (citing *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)). Whether the deprivation of food is objectively serious for purposes of establishing a constitutional violation "depends on the amount and duration of the deprivation." *Id.* at 720 (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). *Compare Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) ("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation."), *with Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1083 (5th Cir. 1991) (finding that failure to fee a prisoner for twelve days violated the Eighth Amendment). "[O]nly a substantial deprivation of food to a prisoner" states a viable Eighth

Amendment claim. *Rieco v. Moran*, 633 F. App'x 76, 78 (3d Cir. 2015) (per curiam) (quoting *Lindsey*, 327 F. App'x at 321).

Pumba alleges that on May 21, 2021, Lieutenant Gonzalez ordered officers to remove Pumba's dinner and lunch from his cell and throw them away. Pumba also alleges that on June 16, 2022, Sergeant Volpe ordered correctional officers to not give food to Pumba. Pumba does not allege how many meals he was allegedly deprived due to Sergeant Volpe's order on June 16th. As to both deprivations, he does not allege that either caused him harm. Pumba's allegations, as pleaded, are insufficiently serious to state plausible Eighth Amendment claims. *See Zanders v. Ferko*, 439 F. App'x 158, 160 (3d Cir. 2011) (per curiam) (concluding that "the alleged deprivation of three meals over two days [to a diabetic inmate] fails to rise to the level of a constitutional violation" (citation omitted)); *Garrett v. Gonzalez*, 588 F. App'x 692 (9th Cir. 2014) (affirming dismissal of Eighth Amendment claim where *pro se* plaintiff failed to allege sufficient facts showing that deprivation of three consecutive meals "resulted in any pain or injury to his health"); *Adderly v. Harry*, Civ. No. 3:CV-13-1465, 2015 WL 5016501, at *4 (M.D. Pa. Aug. 21, 2015) (concluding that deprivation of lunch one day and breakfast and lunch following day failed to state Eighth Amendment claim). Accordingly, the court will dismiss Pumba's deprivation of food claims against Lieutenant Gonzalez and Sergeant Volpe.

      b.      <u>Deprivation of Mattress, Clothing, and Water</u>

Pumba alleges that Sergeant Volpe ordered maintenance officers to turn off the water to his cell and placed him in a "suicide cell" with no mattress and no clothing. Pumba also alleges that the following day he asked Lieutenant Gaglione to turn on the water in his cell and provide him with a mattress, but she refused.

Through these allegations, Pumba has not stated a plausible Eighth Amendment claim against Sergeant Volpe or Lieutenant Gaglione based on the deprivation of a mattress and clothing. It is unclear from Pumba's allegations how long the alleged deprivations lasted. It is possible that Pumba is claiming that the deprivations lasted two to three days insofar as he alleges that the mattress and clothing were removed and the water in his cell shut off on July 16, 2022, and that his request for a mattress, clothing, and water was denied on the following day, July 17, 2022. Nevertheless, even if he is alleging deprivation of a mattress and clothing for two to three days, he has not asserted a plausible constitutional violation actionable under section 1983. *See, e.g.*, *Adderly v. Ferrier*, 419 F. App'x 135, 139–40 (3d Cir. 2011) (per curiam) (finding that depriving inmate of mattress for seven days "may not have been harsh" but did not "constitute a denial of the minimal civilized measures of life's necessities" (internal quotation marks omitted)); *Freeman v. Miller*, 615 F. App'x 72, 77 (3d Cir. 2015) (per curiam) (affirming district court's decision to grant summary judgment on conditions of confinement claim where suicidal inmate placed in "hard cell" was deprived "desk, seat, showers, a mattress, soap, recreation, mail, and toilet paper" for seven days).

In addition, Pumba's alleged deprivation of water does not state a plausible Eighth Amendment claim. In this regard, Pumba has not alleged whether, during the water shut off, he was prevented from using the bathroom, he was provided other fluids for drinking, or he was otherwise denied basic necessities. *Compare Collier v. Adams*, 602 F. App'x 850, 852 (3d Cir. 2015) (per curiam) (concluding that there was no Eighth Amendment violation where prisoner's water was shut off for 77 hours, but other fluids were available to him), *with Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 228–29 (3d Cir. 2015) (holding that complete lack of potable water for three days "other than water in a toilet bowl . . . poses a clear 'substantial risk of serious harm'

10

to an inmate" (quoting *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994))). Absent additional details and context related to the water shut off, Pumba has not adequately pleaded a plausible conditions-of-confinement claim based on the deprivation of water.

### 2. Excessive Force Claim

Pumba alleges that on June 16, 2022, Sergeant Volpe ordered members of the CERT team to "use excessive force against [him]" by punching and kicking him and "using cuffs" to cut his wrist. Compl. at ECF p. 5. Pumba further alleges that Sergeant Volpe used OC spray and "sprayed [him] on [his] eyes, on [his] nose, on [his] mouth, and all over [his] body," even when he was strapped to a chair with his hands and legs tied. *Id.* He further alleges that Sergeant Volpe "assaulted" him while he was in handcuffs. *Id.* The court understands these allegations as Pumba's attempt to assert an Eighth Amendment excessive force claim against Sergeant Volpe.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). When screening an Eighth Amendment excessive force claim under section 1915(e)(2), the court asks whether the prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, Civ. A. No. 20-687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). When determining whether the force applied was excessive, the court considers:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (citation and internal quotation marks omitted).

Here, Pumba has alleged a sufficient basis from which the court could infer that Sergeant Volpe used excessive force on Pumba on June 16, 2022.[3] Therefore, the court will permit this claim to proceed against Sergeant Volpe.

### 3. Claim for Deliberate Indifference to Serious Medical Need

Pumba alleges that Nurse Kaysce refused to provide him medical care after the incident with Sergeant Volpe. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."

---

[3] The June 16, 2022 incident of excessive force alleged in the complaint is very similar to an incident Pumba alleged in a separate case as having occurred exactly one year earlier, on June 16, 2021. *See Pumba v. Lehigh Cnty. Jail Admin.*, Civ. A. No. 22-179, 2022 WL 1443679, at *2 (E.D. Pa. May 6, 2022) (describing June 16, 2021 incident at LCJ where Sergeant Volpe told officers not to give Pumba dinner, "maliciously sprayed" him with OC spray "for at least four hours straight," and caused him to suffer fractured wrist). It is possible that these two claims are based on the same event. If they are, then Pumba has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Easton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc). However, accepting Pumba's factual allegations as true, and drawing all reasonable inferences in his favor, *see Shorter*, 12 F.4th at 374, the court is unable to conclude at this time that the two claims asserted against Sergeant Volpe are based on the same event.

*Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Here, Pumba alleges that, after he was assaulted and sprayed with OC spray by Sergeant Volpe, he asked Nurse Kaysce to treat his resulting fever, body pain, and injured wrist, and to "remove the OC spray from [his] body." Nurse Kaysce allegedly refused.

These allegations are sufficient for the court to infer that Nurse Kaysce was deliberately indifferent to Pumba's serious medical needs. Accordingly, the court will permit this claim against Nurse Kaysce to proceed. *See Cummings v. Smith*, Civ. A. No. 09-335, 2013 WL 5377376, at *2 (E.D. Pa. Sept. 25, 2013) (explaining that courts have held that "the failure to decontaminate prisoners or otherwise provide medical treatment for prisoners exposed to pepper spray can support a claim for the violation of the Eighth Amendment, where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain" (footnote and internal quotation marks omitted)).

### 4. Claim Against Director Donate

Pumba alleges that when he "contacted Director Donate, she said she hates n— and that [he[ deserved it.'" Compl. at ECF p. 5.[4] To the extent that Pumba attempts to assert an Eighth Amendment conditions-of-confinement claim based on the deprivation of a mattress, clothing, and water, while he was placed in a suicide cell, his claims for the reasons explained above. *See supra* at pp. 9–10. To the extent that Pumba intends to assert an Eighth Amendment or an equal protection

---

[4] Although unclear, the court presumes Pumba contacted Director Donate about his inability to access a mattress, clothing, or water in his cell.

claim against Director Donate based on her use of a racial insult against him, he has failed to state a plausible claim.[5] The use of racial slurs and insults do not, by themselves, violate the Constitution. *See Richardson v. Sherrer*, 344 F. App'x 755, 757 (3d Cir. 2009) (per curiam) ("Verbal harassment of a prisoner, without more, does not violate the Eighth Amendment."); *Jones v. Sorbu*, Civ. A. No. 20-5270, 2021 WL 398494, at *9 (E.D. Pa. Feb. 4, 2021) ("Defendant Kelly's use of racial epithets, though despicable and indefensible, does not amount to an equal protection violation absent 'harassment or some other conduct that deprives the victim of established rights.'" (quoting *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999))). Accordingly, the court will dismiss all claims against Director Donate.

### III.   CONCLUSION

For the foregoing reasons, the court will dismiss the following claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii): (1) the deprivation of food claim against Lieutenant Gonzalez and Sergeant Volpe; (2) the conditions-of-confinement claim against Sergeant Volpe, Lieutenant Gaglione, and Director Donate; and (3) any equal protection claim against Director Donate. Pumba's claim for excessive force against Sergeant Volpe and his claim for deliberate indifference to serious medical needs against Nurse Kaysce pass statutory screening. In addition, because the court cannot determine at this time that Pumba could not cure the defects in the claims that the court is dismissing, and considering Pumba's *pro se* status, the court will grant him the option to file an amended complaint to attempt to cure the defects in those claims or advise the court that he seeks to proceed only on the causes of action which have passed statutory screening.

---

[5] The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state a plausible equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of N.Y.*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).

The court will enter a separate order.

                                        BY THE COURT:

                                        /s/ *Edward G. Smith*
                                        EDWARD G. SMITH, J.